Mr. Justice Clavton
delivered the opinion of the court.
This was an action founded upon a note executed to the commissioners of the sinking fund for money loaned. There was a general demurrer to the declaration, which was sustained, and judgment rendered for the defendant, in the court below. The case then comes by writ of error to this court.
The sinking fund had its origin in the charter of the Planters’ Bank, by which the governor was required to subscribe for ten thousand shares of the stock in behalf of the state, and to issue bonds therefor. By the 10th section of the charter a portion of the dividends accruing upon the stock belonging to the state, was directed to constitute a sinking fund, under the management of the auditor and the president and cashier of the bank, for the redemption of the state bonds issued to obtain money to pay for the stock subscribed by the state. The fund received subsequent accessions from other sources, but the same character adheres to it in all its changes. .
Some of the positions assumed in the argument have already received the determination of this court, in the case of the Commissioners of the Sinking Fund v. Walker, 6 How. 143. In that *106 case, after a very elaborate argument, four points were resolved r 1st. That the state, by legislative enactment, could appoint trustees. 2d. That the plaintiffs in that case were competent to act. 3d. That a trust was created by the section of the charter before cited; and 4th. That the trustees could sue at law, on a contract made by them in discharge of their legislative functions. Had the present suit been brought by the original commissioners of the sinking fund, the whole case would be covered by this decision.
By subsequent legislative enactments, the management and control of this fund were vested in a person styled the state commissioner. The powers granted to him are quite as comprehensive and ample as those given to the first commissioners. But it is now urged, that the state could not change the trustees without the consent of' all the persons interested in the fund, though it is conceded that such change might be made with such consent.
The consent of the state has been manifested by the act itself; the consent of the trustees has been equally manifested by their surrender of the funds, and of this note, among the rest, into the hands of the new trustee. There had been no formal conveyance of the legal title in the fund to them, and none consequently was necessary from them. A legislative grant is the highest evidence of title, when the' legislature has power to make title. Grignon’s Lessee v. Astor et al., 2 How. S. C. R. 344. A surrender of the grant to the grantor revests the title in him. When the whole beneficial interest in the trust estate is vested in an individual, he may appoint a‘new trustee. Hill on Trustees, 188. If he fails' to do it, a court of chancery would compel him. '
Had any one else than the state, either the bond holders or the debtors to the fund, any interest which could prevent the exercise of this power by the state 1 The fund belonged to the state, and was expressly excepted out of the operation of the Briscoe bill. Acts of 1843, p. 54, sec. 5. The trustees were originally appointed without the assent of any third party. The bond holders'had nothing to do with their creation, and if *107 they have any direct interest in the fund, it can only be protected or enforced in a court of equity. Upon a vacancy in the office of the trustees, the party which made the original appointment made another trustee. 'We are authorized to infer a vacancy from the fact, that the former trustees made no objection to the change. It was a high duty upon the part of the state, to see that the trust was executed, and so far from the appointment being matter of objection, the state would not have redeemed the faith which It had pledged, if it had permitted the trust to fail, by reason of the want of a trustee. If there were a trust in favor of any one but the state, then the state itself, after the vacancy in the trusteeship, became in its corporate capacity the trustee. It was its duty to provide for the execution of the trust, and it has but performed this duty in the course it pursued. No one could object but the cestuis que trust. They could only do so in a court of equity, and there probably only for an improper exercise of the power of appointment. There was no trust for the'debtors to the fund.
Then if the state commissioner be the trustee, as the successor of the former commissioners, and clothed with the legal title, can he proceed with the suit? The statute creating the office of state commissioner authorizes him to collect and receive all the effects belonging to the fund, and to manage the same, and to compel and coerce payment and settlement by suit or otherwise. These terms are quite as comprehensive as those employed in the charter of the bank, and'quite as sufficient to convey the legal title. We think they had that effect, and that the state commissioner is fully, authorized to sue for and collect the debts due the fund. We do not entertain the slightest doubt, but that payment to "frim would be a valid discharge of the debt, and the defendant be thereby fully protected.
We cannot perceive that the principles in the case of Allen v. McKeen, 1 Sumn. 276, cited in argument, have any application here. The original trustees are not before the court; they set up no claim, and they acquiesce without a murmur in the action of the.legislature. The debtors certainly have no vested right to retain the fund.
*108 The judgment is reversed, and the cause remanded for further proceedings, in accordance with this opinion.
Judgment reversed.
Mr. Chief Justice ShaRkey, being interested, gave no opinion.